UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
AHMAD B. NURRIDDIN,                 )
                                    )
            Plaintiff,              )      Civil Action No. 04-2052 (JDB)
                                    )      ECF
                                    )
      v.                            )
                                    )
MICHAEL GRIFFIN, ADMINISTRATOR,     )
      NASA,                         )
                                    )
                                    )
            Defendant.              )
_____ )
```

**MOTION TO DISMISS,
OR IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

Federal defendants move, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6) and 56, to dismiss

the second amended complaint, on in the alternative, for summary judgment on their behalf.

The plaintiff, *pro se*, is an African-American Muslim male who contends that NASA

("the Agency") and four of its employees discriminated against him from the time of his hiring in

1991until his termination in 2004.  (2ⁿᵈ Amended Complaint ¶¶ 22, 42, 51-52.).  He brings this

action under Title VII of the Civil Rights Act of 1964, the Conspiracy Act § 1983[1] and the

_____

[1]Plaintiff purports to assert a cause of action under "the Conspiracy Act § 1983" [sic].
Second Amended Complaint, ¶ 2; Count VII.  This claim should be dismissed because 1) this
does not constitute a "...plain statement of the grounds upon which the court's jurisdiction
depends...".  Rule 8 of the Federal Rules of Civil Procedure.  Plaintiff fails to provide a valid
legal citation and it is unknown what he means by "the Conspiracy Act."  If he intends to assert a
claim under 42 U.S.C. § 1983, his claim must fail because that section only applies to states and
municipalities.  Secondly, if this constitutes an attempt to assert a civil conspiracy claim under
common law, his claim must fail for failure to exhaust administrative remedies under the Federal
Tort Claims Act.  Finally, the claim should be dismissed because any claims plaintiff has for
conspiracy to deprive him of his rights under the constitution are subsumed in his claim for

Rehabilitation Act of 1973.  (2nd Amended Complaint ¶ 2.)  He alleges that NASA discriminated against him and subjected him to a hostile work environment on the basis of race (African-American), religion (Islam), gender (male) and disability (major depression, anxiety and back pain), and retaliated against him.  ¶¶ 2, 23, 38.  He also asserts a cause of action for conspiracy purportedly under §1983.  ¶2.  He has one other lawsuit pending and has brought at least nine separate administrative actions before the EEOC.  2nd Amended Complaint ¶¶ 24, 26, 28, 30, 32, 34, 36, 38.  The second amended complaint consists of 9 counts containing 193 paragraphs. Plaintiff describes seemingly endless work-place events which he alleges were discriminatory.  In paragraphs 6-7, and 10- 21, plaintiff identifies various NASA staff who he claims played a role in the alleged discrimination against him.  In paragraphs 24-41 plaintiff describes the actions that he took administratively to pursue his claims of discrimination.  He details eight separate EEO complaints that he allegedly made on 1) September 16, 1997; 2) January 6, 1998; 3) May 21, 1998; 4) September 9, 1998; 5) May 9, 1999; 6) August 18, 2000; 7) October 31, 2001; and 8) February 23, 2004.  Plaintiff alleges that he followed up each of these informal EEO complaints with formal complaints.  Second amended complaint ¶¶ 24, 26, 28, 30, 32, 34, 36, and 38.

WHEREFORE, defendants move to dismiss the complaint, or in the alternative, for summary judgment, based on the reasoning set forth in the accompanying memorandum.

A proposed order is attached.

Respectfully submitted,

---

employment discrimination against NASA as set forth in greater detail below.

\_\_\_\_/s/_____
JEFFERY A. TAYLOR
D.C. Bar No. 498610
United States Attorney


\_\_\_\_/s/_____
RUDOLPH CONTRERAS
D.C. Bar No. 434122
Assistant United States Attorney


\_\_\_\_/s/_____
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 307-2332

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
AHMAD B. NURRIDDIN,                 )
                                    )
                 Plaintiff,         )        Civil Action No. 04-2052 (JDB)
                                    )        ECF
                                    )
         v.                         )
                                    )
MICHAEL GRIFFIN, ADMINISTRATOR,     )
        NASA,                       )
                                    )
                                    )
                 Defendant.         )
_____)

## MEMORANDUM OF POINTS & AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

### I.  FACTS

Plaintiff is a former employee of NASA who brings this action under Title VII of the

Civil Rights Act of 1991 and the Rehabilitation Act.  He has been receiving compensation since

December 2000 for occupational disease.  He was separated from NASA on February 6, 2004

due to his medical inability to perform his job.  2nd Amended Complaint ¶22.

Plaintiff became a federal employee in 1991 when his position as a contractor with the

Agency was converted to civil service.  Second Amended Complaint ¶ 43.  At the time of

conversion, Plaintiff worked in the Publications Branch of the Agency's Educational Affairs

Division.  *Id.*  He later moved to the Education Branch.  Plaintiff started civil service at a GS-12,

step 5 level.  Second Amended Complaint ¶ 44 and was promoted to GS-13.

4

In 1998, Plaintiff requested a transfer from the Education Branch.  While the Agency considered his request, plaintiff was frequently absent on sick leave.  His request for a transfer was supported by his treating physiologist.  The Agency requested additional information to evaluate his condition in an attempt to determine if a reasonable accommodation was appropriate.  Letter from Paulette C. Quinn to Dr. Echeverry, November 12, 1998.

In early February 1999, Plaintiff was voluntarily detailed to the National Science Foundation ("NSF") for one year.  In a letter describing the detail, the Agency stated that the information provided by Plaintiff's physicians in December 1998 was insufficient to determine whether an accommodation was required pursuant to the terms of the American with Disabilities Act (ADA); however, the one-year National Science Foundation assignment was provided because it was believed to be in Mr. Nurriddin's best interest.  Report of Investigation ("ROI") 9, Ex. 5, Att. W.

In the amended complaint, Plaintiff outlines countless instances of what he perceives to be discriminatory and retaliatory behavior by his employer.  He perceives much of what was said to him, in person, in memoranda, and in e-mail correspondence, to constitute harassment.  Most of the information contained in the amended complaint is immaterial since it does not pertain to discrete instances of discrimination.  However, the discrete acts that plaintiff identifies include 1) being given a "lowered" performance evaluation of Fully Successful in July 1997 resulting in a "diminished" performance award.  Second amended complaint ¶¶ 57-60;  2) being denied a particular work cubicle.  Second amended complaint, ¶ 67; 3) the removal of work duties by Mr. Owens.  Second amended complaint, ¶¶ 68, 73; 3) the failure of NASA management to provide adequate support staff and funding.  Second amended complaint ¶ 70; 4) being spied upon.

Second amended complaint, ¶ 72; 5) being reprimanded.  Second amended complaint, ¶¶ 73, 79 80, 81, 83-84; 6) being falsely accused of inattention to payment deadlines.  Second amended complaint, ¶¶ 73; 7) being stalked by Dr. Phelps.  Second amended complaint, ¶ 77; 8) being placed on leave restriction.  Second amended complaint, ¶¶ 83, 84; 9) being closely scrutinized. Second amended complaint, ¶¶ 83-84; 10) having his request for administrative leave partially denied.  Second amended complaint, ¶ 84; 11) being given a "lowered" performance evaluation and being denied a performance award in 1998.  Second amended complaint, ¶ 85.  He also alleged that defendants failed to accommodate his medical disability and terminated him due to his disability.  Second Amended Complaint ¶¶ 91, 96-100, 102-113, 119-125, 162-178; 189-193.

## II.  LEGAL STANDARD

A.    <u>Motion to Dismiss</u>

"[A] complaint should . . . be dismissed for failure to state a claim [if] it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  *Conley v. Gibson*, 355U.S. 41, 45-46 (1957).  In deciding a motion to dismiss under Rule 12(b)(6), facts alleged in the complaint must be presumed true and liberally construed in favor of the plaintiff. *See, e.g., Shear v. NRA*, 606 F.2d 1251, 1253 (D.C. Cir. 1979).  The court may consider certain additional evidence in deciding the motion.  *See Arizmendi v. Lawson*, 914 F.Supp. 1157, 1160-61 (E.D.Pa. 1996)("in resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records, and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

B.     Summary Judgment

Summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir. 1995). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Supreme Court precedent holds that a genuine issue of fact is one that could change the substantive outcome of the litigation. *Id.* at 246. Even though all evidence and the inferences drawn from the evidence must be considered in the light most favorable to the nonmoving party, *see*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), a complaint should be dismissed if it "appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Further, the non-moving party cannot "create a genuine issue through mere speculation or  building of one inference upon another." *Id*. at 696-697. *See also Anderson*,  477 U.S. at 247-248.

To meet its burden of proving that there are no genuine facts in dispute, the moving party may offer for consideration affidavits, exhibits, depositions, and other discovery materials. Fed. R. Civ. P. 56(e); *Internet Financial Services, LLC.v. Larson -Jackson*, 310 F. Supp. 2d 1 (D.D.C. 2004). However, the moving party will be granted summary judgment if, with or without these accompanying materials, it demonstrates that summary judgment is appropriate. *Celotex*,  477 U.S. at 327.

C.      Discrimination Cases

Summary judgment must be approached with special caution in employment

discrimination cases.  But, "this does not eliminate the use of summary judgment" in cases of this

type.  *Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (internal citations omitted).

Rather, a "Title VII plaintiff  is not relieved of [his] obligation to support [his] allegations by

affidavits or other competent evidence showing that there is a genuine issue for trial."  *Calhoun

v. Johnson*, 1998 WL 164780, at *3 (D.D.C. March 31, 1998) (internal citations omitted), *aff'd*

1999 WL 825425, at *1 (D.C. Cir. Sept. 27, 2000).

In the employment discrimination context, "a subjective belief of discrimination, however

genuine, cannot be the basis for judicial relief."  *Moore v. Reese*, 817 F. Supp. 1290 (D. Md.

1993)(citation omitted).   Title VII of the Civil Rights Act of the 1964, as amended,  expressly

makes it unlawful for an employer to "to fail or refuse to hire or discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions or privileges of employment because of such individual's race, color, religion, sex or

national origin."  42 U.S.C. Section 2000e-2.  Plaintiff bears the initial burden of establishing a

*prima facie* case of discrimination by a preponderance of the evidence.  *See St. Mary's Honor

Center v. Hicks*, 509 U.S. 502, 506 (1993).  Generally, a plaintiff establishes a *prima facie* case

by showing that: 1) he was a member of a protected group; 2) he was subjected to an adverse

employment action; and 3) the adverse action gives rises to an inference of discrimination.  *Stella

v. Mineta*, 284 F. 3d 135, 145 (D.C.Cir. 2002).  The elements of a *prima facie* case may differ

from case to case (*see Texas Dep't Community Affairs v. Burdine* , 450 U.S. 248, 253 n.6

(1981)).  But the fundamental requirement is that the *prima facie* case, without additional proof

to the contrary, gives rise to an inference that the defendant's conduct was discriminatory. *Simens v. Reno*, 960 F. Supp. 6, 8-9 (D.D.C. 1997).

Under the evidentiary schemes prescribed  in *McDonnell Douglas*, 411 U.S. 792 (1973) and *Burdine*, the burdens of production shift from employee to employer.   If the employee succeeds in establishing the *prima facie* case, the employer must then introduce evidence of a legitimate, nondiscriminatory reason for its actions.  *McDonnell Douglas*, 411 U.S. at 802.  If the employer makes this showing, the burden shifts to the plaintiff to demonstrate that the explanation offered by the Agency is simply not the *true* reason, but a pretext for intentional discrimination.  *Burdine,* 450 U.S. at 256;  *McDonnell Douglas,* 411 U.S.  at 804.  Simply disbelieving the employer's stated reasons for its actions is not enough.  The fact finder must believe the plaintiff's explanation of intentional discrimination as well.  St. Mary's Honor Center, 509 U.S. at 519.

In summary, once the employer articulates a legitimate, nondiscriminatory reason for the employment actions, the presumption of discrimination created by plaintiff's *prima facie* case is eliminated, and the plaintiff bears the ultimate burden of proving that the employer's nondiscriminatory reasons are pretextual.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,  120 S. Ct. 2097 ( 2000).  Indeed, the plaintiff retains the ultimate burden of proof and must present substantial evidence of discrimination in order to survive a motion for summary judgment.  *See*, *Greene v. Dalton*, 164 F. 3d 671, 675 (D.C. Cir. 1999)("Accepting [some] conclusory allegations as true therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of trial.")   Finally, "[t]o defeat a motion for summary judgment, a plaintiff cannot create

a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'" *Hastie v. Henderson*, 121 F. Supp. 2d 72, 77 (D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C.Cir. 2001).

D.      Discrimination and Hostile Work Environment

        With respect to harassment cases which rise to the level of a hostile work environment, it is axiomatic that the harassment must be permeating, ongoing, continuous, and severe enough to constitute unlawful discrimination. *Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 91 (D.D.C. 2004); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).  To be actionable, a "hostile environment" claim generally requires a showing of a pattern of offensive conduct, not just a single act.  *See e.g. Scott v. Sears, Roebuck and Co.*, 798 F. 2d 210, 214 (7th Cir. 1986)(offensive comments and conduct of co-workers were "too isolated and lacking the repetitive and debilitating effect necessary to maintain a hostile environment claim"); *Downes v. Federal Aviation Administration*, 755 F. 2d 288, 293 (D.C. Cir. 1985)( "[A] pattern of offensive conduct must be proved...").  Even evidence that  five incidents occurred over three years has been held not to establish that the harassment was so routine as to constitute a hostile environment. *Eruanga v. Grafton School, Inc.*, 181 F. Supp. 2d 514 , 521 (D. Md. 2002)("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated...").  Courts have typically recognized that Title VII is not a "general civility code" and cannot be used to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"  *Lester v. Natsios,* 290 F. Supp. 2d 11, 20 (D.D.C. 2003).

        In determining whether an actionable hostile work environment claim exists, courts must

consider "all the circumstances, including frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  Further, the challenged conduct must substantially affect the work environment of a reasonable person in order to violate Title VII. *Id.*   And the conduct must be subjectively perceived by the victim as abusive. *Harris*, 510 U.S. at 22.

To establish a *prima facie* case under Title VII that a hostile work environment was created by the actions of a supervisor, plaintiff must demonstrate that: 1) he belongs to a protected group; 2) he  was subjected to unwelcome harassment; 3) the harassment complained of was based on race (or other protected characteristic); 4) the harassment complained of affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Schmidt v. Chao*, 2004 WL2861408 (D.D.C.), March 30, 2004 (internal citations omitted).

 Against the framework of these cases, plaintiff fails to produce evidence sufficient to show that he was subjected to a hostile environment based upon racial and sexual discrimination.

### III.  ARGUMENT

### A.    THE ADMINISTRATOR OF NASA SHOULD BE THE SOLE PARTY DEFENDANT AS TO TITLE VII; DEFENDANTS NOVAK, CASTILLO, BATKIN & PHELPS SHOULD BE DISMISSED.

The only proper defendant in a Title VII action is the head of the agency in which the alleged discriminatory acts occurred.  42 U.S.C. § 2000e-16(c); *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975); *Royal v. Bergland*, 428 F. Supp. 75 (D.C. 1977).

Plaintiff has filed this suit against the current administrator of NASA, Michael Griffin, in

his official capacity, in addition to two current and two former NASA employees.  Plaintiff

brings this action against Vicki Novak in her official capacity (2nd Amended Complaint ¶ 6), and

the remaining three employees (Malcom Phelps, Alfred Castillo, and Mark Batkin) in their

individual capacities.  (2nd Amended Complaint ¶ 7.)  Each of the facts alleged by the plaintiff in

the lawsuit arose from actions or omissions occurring in the workplace.  (2nd Amended

Complaint ¶¶ 22-140.)  Each of the claims brought against these four current and former NASA

employees arose within the course and scope of their federal employment.  (2nd Amended

Complaint ¶¶ 6-7, 23, 24, 26, 28, 30, 32, 34, 36, 38, 52, 57, 58, 59, 73, 74, 75, 77, 80, 83, 85, 88,

89, 95, 96, 101, 104, 106, 108, 109, 112, 114, 119, 125, 128, 129, 130, 131, 134, 135, 179-182,

and 186.)  For instance, plaintiff alleges that Vicki Novak conspired to terminate his worker's

compensation benefits, made efforts to constructively discharge him, and terminated him.  Alfred

Castillo allegedly conspired to terminate plaintiff's worker's compensation benefits, made efforts

to constructively discharge him, terminated him, and retaliated against him.  Dr. Phelps allegedly

harassed plaintiff on the job causing his medical conditions, issued a "lowered" performance

evaluation, denied plaintiff travel opportunities, stalked and intimidated plaintiff on the job, and

wrongfully placed plaintiff on AWOL.  Finally, Mark Batkin allegedly conspired on the job to

violate plaintiff's constitutional rights.

The Administration involved in this litigation is NASA.  Michael Griffin is the

Administrator of NASA and is the only proper defendant under Title VII.  The other four

individuals should be dismissed.

### B.    PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES SO HIS CLAIMS SHOULD BE DISMISSED

An aggrieved person who believes he has been discriminated against must contact an EEO counselor within 45 days of the alleged discrimination. 29 C.F.R. § 1614.105. Thereafter, he must file a formal complaint of discrimination within 15 days of his final counseling interview. 29 C.F.R. § 1614.106(b). If plaintiff does not exhaust his administrative remedies he cannot file a claim in federal court. *Nurriddin v. Goldin*, 382 F.Supp.2d 79, 92 (D.D.C. 2005). The purpose of the administrative process is to give the employer notice of a claim and provide the parties with an opportunity to resolve the complaint. *Nurriddin v. Goldin*, 382 F.Supp. 2d at 91 (D.D.C. 2005).

Plaintiff alleges that he was stalked and intimidated by Malcom Phelps on August 24, 1998. Second Amended Complaint ¶ 77; EEO complaint # 7. Plaintiff's first contact with an EEO counselor occurred on September 9, 1998, well within the initial 45-day time period. However, plaintiff failed to file a formal complaint of discrimination within 15 days of his final counseling interview. Plaintiff's last contact with the EEO counselor was on December 16, 1998. EEO complaint 7, exhibit 3. Plaintiff did not file a formal complaint of discrimination until 29 days later on January 14, 1999. EEO complaint 7, exhibit 2. Thus, plaintiff failed to timely file a formal complaint of discrimination and he has thus failed to exhaust his administrative remedy with regard to allegedly being stalked by Dr. Phelps.

Likewise, with regard to Plaintiff's claim that he was reprimanded, plaintiff did not timely exhaust his administrative remedies. He alleges that he was reprimanded on August 26, 1998 or on September 2,1998, in retaliation for pursuing his EEO rights. Second Amended Complaint ¶ 79; EEO complaint 7, exhibit 2, para. c. Plaintiff sought EEO counseling in a timely manner within 45 days of the alleged incident, but again, he failed to timely file a formal

complaint of discrimination.  *Id*.

The same is true with regard to plaintiff's allegations that he was placed on leave restriction, closely scrutinized, reprimanded (2nd amended complaint ¶ 83), was denied travel opportunities (2nd amended complaint ¶ 84), had his request for administrative leave partially denied (*Id.*), and was denied accommodation for his alleged medical disability.  (2nd amended complaint, Count V.)  These claims are all captured in EEO complaint 7, and in each instance, plaintiff arguably contacted an EEO counselor within 45 days of the alleged discrimination, but in every case plaintiff failed to timely file a formal complaint within 15 days of the last contact with the EEO counselor (December 16, 1998.)  EEO complaint 7, exhibits 2 & 3.  All of these claims should be denied for failure to exhaust administrative remedies.

Plaintiff alleged that NASA management failed to provide adequate support staff and funding.  Second Amended Complaint ¶ 70.  Defendant finds no evidence that plaintiff ever sought EEO counseling or filed a formal complaint of discrimination on this issue.  Reports of Investigations 4-9.  Thus, he has failed to exhaust his administrative remedies and these claims should be dismissed.

Plaintiff alleges that he was spied upon.  Second Amended Complaint ¶ 72.  Specifically, he alleges that on June 12, 1998, Mr. Owens solicited Pam Bacon and Kevin Durham to report on plaintiff while at a NAACP convention.  *Id*.  It is not clear precisely when Plaintiff sought EEO counseling for this alleged incident because he, in fact, sought counseling on May 7, 1998, and on May 21, 1998, before this incident occurred.  However, as the incident is contained in the EEO counselor's report dated August 26, 1998, defendant assumes that plaintiff timely sought counseling.  However, plaintiff did not file a formal complaint of discrimination until September

9, 1998.  This is 19 days after his final counseling interview which took place on August 21,

1998.  EEO counselor's report, HQ-98-018, August 26, 1998.  Thus, plaintiff did not timely file a

formal complaint of discrimination and this claim should be dismissed.

Plaintiff alleges that he was denied a non-competitive promotion.  Second Amended

complaint ¶ 59.  Specifically, plaintiff complains that Mr. Gary Gans received a non-competitive

promotion whereas plaintiff was not promoted.  Plaintiff contends that Mr. Gans is a lesser-

qualified white co-worker.  *Id*.  Plaintiff speculates that Mr. Gans received the promotion as a

reward for allegedly providing testimony favorable to the Agency.  *Id*.  Although plaintiff did not

state in the amended complaint the date on which this incident occurred, according to the

addendum to plaintiff's formal complaint of discrimination, Mr. Gans was promoted on August

14, 1998.  EEO complaint, ROI 7.  Plaintiff timely sought EEO counseling on September 9,

1998.  The final counseling interview took place on December 16, 1998 and plaintiff filed an

formal complaint of discrimination on January 14, 1999.  Complaint of discrimination, January

14, 1999.  Plaintiff's complaint was filed 29 days after the final counseling interview and was

untimely filed.  Accordingly, this claim should be dismissed.

With regard to plaintiff's allegations that the above-described acts were retaliatory, all but

two of plaintiff's claims must fail for failure to exhaust administrative remedies.  Since the

United States Supreme Court Decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101

(2002), it has been the law that Title VII plaintiffs must timely exhaust their administrative

remedies separately with respect to each discrete act of alleged discrimination or retaliation, and

this Court has consistently applied the holding of *Morgan*.  *Romero-Ostolaza v. Ridge*, Civil

Action No. 03-1890 (RCL), 2005 WL 736525 at 6-7 (D.D.C. March 31, 2005); *Velikonja v.*

*Mueller*, 315 F. Supp. 2d 66, 74 (D.D.C. 2004); *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d

132, 137-138 (D.D.C. 2004); *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 34 (D.D.C. 2003).  *See also,*

*Dunlap v. Kansas Department of Health and Environment*, No. 02-3331, 2005 WL 737585, at 5,

(10th  Cir. April 1, 2005), citing *Martinez v. Potter*, 347 F. 3d 1208, 1210 (10th Cir. 2003).  The

only exception to the *Morgan* requirement that each act of discrimination or retaliation must be

separately exhausted is where a series of acts are alleged to constitute a "hostile work

environment" and at least one act constituting a part of that hostile work environment claim has

been administratively exhausted in a timely manner.  The two claims that plaintiff timely

exhausted were the denial of a particular work cubicle (2nd amended complaint ¶ 67), and the

removal of work duties by Mr. Owens (2nd amended complaint ¶ 68, 73.)  These two claims

should also be dismissed on other grounds because, as shown below, the actions were not

sufficiently adverse.

### C.    PLAINTIFF CANNOT MAKE OUT A PRIMA FACIE CASE OF DISCRIMINATION BECAUSE THERE WERE NO ADVERSE EMPLOYMENT ACTIONS.

Plaintiff must establish a prima facie case of discrimination by showing that "(1) he is a

member of a protected class; (2) he suffered an adverse employment action; and (3) the

unfavorable action gives rise to an inference of discrimination."  *Stella v. Mineta*, 284 F.3d at

144-45.  In order to make out a prima facie case of discrimination, where there is "no

diminuition in pay or benefits," plaintiff must show "materially adverse consequences affecting

the terms, conditions, or privileges of [his] employment or [his] future employment opportunities

such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively

tangible harm."  *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999)*; Broderick v. Donaldson*, 437

16

F.3d 1226, 1232 (D.C. Cir. 2006).  "[C]hanges in assignments or work-related duties do not ordinarily constitute adverse employment decision if unaccompanied by decrease in salary or work hour change."  (*Johnson v. Demario,* 14 F. Supp. 2d 107*, 111 citing Mungin* v. *Katten Muchin & Zavie*, 116 F.3d 1549 (D.C. Cir. 1997); and *Wideman v. Wal-mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir. 1998).  *See, Sullivan-Obst v. Powell*, 300 F.Supp. 2d 85, 93 (D.D.C. 2004)("the bulk of these allegations do not rise to the level of 'adverse personnel actions' as defined by this circuit.").

### a. Plaintiff's non-assignment to a window cubicle was not an adverse action.

Plaintiff alleges that he subjected to disparate treatment when he was not assigned to a particular work cubicle.  Second amended complaint ¶67.  In certain circumstances an office assignment can amount to an adverse employment action.  For example, in *Singletary v. District of Columbia*, 225 F.Supp. 2d 43 (D.D.C. 2002), the court found that an office assignment constituted an adverse employment action where

> The room to which plaintiff was assigned was not previously used as an office space, but rather was used as a general storage room.  The storage room was without heat or ventilation.  It was poorly lit....The only entrance to plaintiff's office was through a clinic to which plaintiff did not have keys.  The phone in the room often did not work.  The office space contained appropriate office furniture for him, but also contained brooms, boxes of debris, and 'a gigantic bunny rabbit.'

*Singletary*, 225 F.Supp. 2d at 58-59, *rev'd on other grounds*, 351 F.3d 519 (D.C. Cir. 2003).

The instant case is easily distinguishable from *Singletary* because here there are no allegations that the space to which plaintiff was originally assigned was unhabitable or otherwise unsuitable office space.  Consequently, the absence of a window cannot be deemed a cognizable adverse action.  After all, "[m]ere idiosyncrasies of personal preference are not sufficient to create an injury." *Brown v. Brody*, 199 F.3d at 457.  "[N]ot everything that makes an employee

unhappy is an actionable adverse action." *Jones v. Billington*, 12 F. Supp. 2d 1, 13 (D.D.C.

1997), aff'd without op., 1998 WL 389101 *39 (D.C. Cir. June 30, 1998).  In any event,

defendant had legitimate non-discriminatory reasons for its actions. After considering various

options, Sherri McGee decided to offer the window cubicle space to the person with the longest

time in grade.  Affidavit of Sherri McGee, June 6, 1999; Affidavit of Ahmad Nurriddinn, April

30, 1999; Affidavit of Frank Owens, June 3, 1999.

**b.  Reprimands are not adverse actions.**

Plaintiff alleges that the agency discriminated against him by reprimanding him.

Amended complaint ¶ 60.  Plaintiff's claim that he was reprimanded should be dismissed

because the reprimand did not materially affect the terms, conditions, or privileges of his

employment and, thus, is not an adverse personnel action.  *See Nurriddin v. Goldin*, 382 F.Supp.

2d 79, 94;  *Broderick v. Donaldson*, 338 F.Supp. 2d 30, 42. (D.D.C. 2004); *Walker v. WMATA*,

102 F.Supp. 2d 24, 29 (D.D.C. 2000).

**c.  Termination of duties and an invitation to co-workers to report on plaintiff are not adverse employment actions.**

Plaintiff alleges that on April 30, 1998 his "work responsibilities for the National

Physical Sciences Consortium ("NPSC" or "Consortium") program were removed by Mr.

Owens."  Amended complaint ¶ 51.  It is true that NASA management, through Mr. Owens,

made a decision to take responsibility for the program away from Mr. Nurriddin.  The NPSC was

frustrated with Mr. Nurriddin's management of the program and Mr. Nurriddin was frustrated

with the NPSC.  Letter to Mr. Owens from L. Nan Snow, 4/3/98.  According to Mr. Owens,

NASA was phasing out the program because of continual problems with funding and disputes

between the consortium and NASA.  Frank Owens declar. p. 2.  The Executive Director of NPSC

18

requested on more than one occasion that Mr. Nurriddin be removed as Program Manager.  *Id*.

Plaintiff concedes that Mr. Owens received a disparaging letter about him from the Executive

Director of NPSC.  Nurriddin declar. p. 3.  According to the Agency, Mr. Nurriddin's removal

from the program was not a disciplinary action and it did not negatively impact his performance

appraisal.  Id. at 3.  Frank Owens Declar. p. 2.  Plaintiff disputes this assertion, contending that

the removal of duties made it less likely that he would be promoted in the future.  Nurriddin

declar. p. 3.

Here there was "no diminution in pay or benefits."  Accordingly, in order for plaintiff to

survive summary judgment, he must show that he "suffered objectively tangible harm" as a

consequence of defendant's action in removing his NPSC program responsibilities.  Plaintiff fails

to make such a showing.  Although he may have been in favor of discontinuing the program and

felt thwarted when he was relieved of his duties, there is no evidence–save  his own

speculation–that his future career path at NASA was limited as a result.  "[A] plaintiff's

perception that a lateral transfer would be personally humiliating is insufficient, absent other

evidence, to establish a materially adverse employment action."  *Flaherty v. Gas Research

Institute*, 31 F.3d 451, 457 (7th Cir. 1993).  "[R]eassignment within a division, without demotion

or corresponding reduction in salary or benefits does not constitute adverse action."  *Childers v.

Slater*, 44 F.Supp. 2d 8, 21 (D.D.C. 1999).

**d.  Being denied leave and travel are not adverse employment actions.**

Plaintiff alleges in the amended complaint that he was denied travel opportunities but he

has not alleged and cannot prove that he has suffered objectively tangible harm as a result of the

denial of travel.   "It is not enough for plaintiff to say that because of the denial of travel his

general stature at NASA has suffered.  *See Lu v. Billington*, 2005 WL 670771, *6 (D.D.C. Mar.

22, 2005)(limited travel opportunities not an adverse employment action.)  Plaintiff must tie the

alleged discriminatory employment action to some actual, tangible adverse employment

consequence [citation omitted.]" *Nurriddin v. Goldin*, 382 F.Supp. 2d. at 101.  In this case, he

has failed to do so.

> **D.      PLAINTIFF FAILS TO MAKE OUT A PRIMA FACIE CASE OF
>          HOSTILE WORK ENVIRONMENT**

A "hostile work environment" is a form of disparate treatment that exists when the

plaintiff is subjected to a hostile, intimidating or offensive work environment that is sufficiently

pervasive or severe to alter the conditions of the plaintiff's employment.  *Harris v. Forklift*

*Systems, Inc.*, 510 U.S. 17 (1993).  In order to make out a claim for a hostile work environment,

plaintiff must show 1) that he is a member of a protected class; 2) he was subjected to

unwelcome harassment; 3) the harassment occurred because of his protected status; 4) the

harassment affected a term, condition or privilege of his employment; and 5) the employer knew

or should have known of the harassment but failed to take any action to prevent it.  *Nurriddin v.*

*Goldin*, 382 F.Supp.2d 79, 107 (D.D.C. 2005).

The Supreme Court reemphasized in *Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998), that the standards for finding a hostile work environment are "sufficiently demanding to

ensure that Title VII does not become a 'general civility code'" and that the conduct must be so

extreme as to amount to a change in the terms and conditions of employment.  The Supreme

Court directed the lower courts to determine whether an environment was sufficiently hostile or

abusive by looking at all the circumstances, including the "frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."
*Faragher*, 524 U.S. at 787-88 (*quoting Harris v. Forklift Systems, Inc.*); *see also Nurriddin v. Goldin*, 382 F.Supp.2d at 108.

Here, just like in *Nurriddin v. Goldin*, 382 F.Supp.2d at 108, none of the alleged incidents described by plaintiff rise to the level of a hostile work environment. Even if plaintiff's allegations are true, the incidents described are petty, workplace annoyances. The alleged incidents occurred over a six-year span and occurred "intermittently", generally involving different individuals, and taking place in separate contexts. In addition, all of the alleged incidents taken together which plaintiff claims constitute a hostile work environment are one and the same as the individual, discrete employment actions which plaintiff contends are discriminatory and retaliatory. Moreover, plaintiff has failed to establish that any alleged harassment occurred because of his protected status. None of the alleged incidents involve references to plaintiff's race, religion, gender or disability. Considering all of the alleged incidents *in toto*, the incidents do not come close to meeting the standards set by the courts for proving actionable race-based hostile environment.

### E.     PLAINTIFF FAILS TO MAKE OUT A PRIMA FACIE CLAIM OF DISCRIMINATION AND RETALIATION

Plaintiff relies on incidents that he cannot demonstrate to have been the result of discrimination based on race, gender, religion, or protected activity. *See Singh v. U.S. House of Representatives*, 300 F.Supp.2d 48, 57 (D.D.C. 2004) (plaintiff must make necessary causal connection between plaintiff's race, color and national origin, and the alleged mistreatment); *Lester v. Natsios*, 290 F.Supp.2d 11, 22 (D.D.C. 2003) (discrimination must be based on protected status); *Jones v Billington*, 12 F.Supp.2d 1, 11 (D.D.C. 1997)(as part of plaintiff's

*prima facie* case, plaintiff must show that harassment was "because of" his race). Here plaintiff cannot prove the existence of a causal link between his protected status and any words uttered by or deeds committed by NASA employees. There is nothing in the second amended complaint, or the record, to suggest that plaintiff has been the victim of race-, gender-,or religious-based comments or deeds, or that NASA employees retaliated against him because of his prior EEO complaints.

F.   **PLAINTIFF FAILS TO STATE A CLAIM UNDER THE REHABILITATION ACT**

The Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 *et seq.*, prohibits discrimination against qualified handicapped employees and requires reasonable accommodation in employment practices for qualified handicapped persons. In order to come within the statute's coverage, the plaintiff must suffer from an impairment that substantially limits a major life activity. *See Toyota Mfg. Kentucky Inc. v. Williams*, 534 U.S. 184 (2002); *Sutton v. United Air Lines*, 527 U.S. 471 (1999). An "individual with a disability" is one who: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 29 C.F.R. §1630.2(g). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. §1630.2(i). In order for a litigant to show that his impairment substantially limits the major life activity or working, he must show that his impairment prevents him from performing a "substantial class" or "broad range" of jobs. *Marks v. Westphal*, 2002 WL 335510 (D.C. Cir.), citing *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001)(en banc), quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491-92 (1999). The Rehabilitation Act provides that the standards used to

determine whether there has been a violation of the statute are the same standards that are used under the Americans with Disabilities Act of 1990.  See, e.g., 29 U.S.C. § 794 (citing 42 U.S.C. §§ 12111, 12201-12204).

A plaintiff asserting a cause of action under the Rehabilitation Act must prove (1) that he is a handicapped person within the meaning of the Act; (2) that he is otherwise qualified for the job; and (3) he was discriminated against because of the handicap.  *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995).  A failure to accommodate case involves a charge that the defendant failed to provide a reasonable accommodation for the plaintiff's handicapping condition.  *Taylor v. Small,* 350 F.3d 1286 (D.C. Cir. 2003).  Section 501 is the exclusive right of action for federal employees.  Federal employees cannot bring suit under § 504 of the Rehabilitation Act.  *Id.*

Plaintiff alleges that he is disabled because of major depression, anxiety and back pain and that agency officials refused to accommodate his disability by reassigning him to a position that he was medically capable of performing within a reasonable commuting distance.  Second amended complaint, ¶¶ 38, 165.

### a.  Mr. Nurriddin did not have a condition that substantially limited the major life activity of working.

The gravamen of Plaintiff's Rehabilitation Act claim is that he was incapable of working for "Code FE management" or "FE Division Management."  His claim is that whenever he worked under certain management officials, he experienced severe stress which was documented by Plaintiff's mental heath care provider.  This led to plaintiff's insistence that he be placed in a position that was not under the supervisory direction of Code FE management, although Plaintiff never identified such a position.  Plaintiff's inability to work for certain managers or a team of

23

managers does not mean that his impairment qualifies as a disability under the Rehabilitation Act.  Plaintiff could still perform the job duties that he was hired to perform as an Education Outreach Specialist or a Education Programs Specialist.  Amended Complaint ¶ 5.  This is borne out most forcefully by the evidence that Plaintiff successfully completed a one-year detail at the National Science Foundation contemporaneously with his complaints that he was incabable of successsfully performing for the FE Division management.  "If the impact of an impairment can be eliminated by changing the address at which an individual works, that impairment is neither permanent nor long term."  *Haynes v. Williams*, 392 F.3d 478, 483 (D.C. Cir. 2004).  Thus, Plaintiff cannot make out a prima facie case of discrimination under the Rehabilitation Act which requires that Plaintiff be unable to work in a broad class of jobs.

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhpas not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton*, 527 U.S. at 492.

### b.  Mr. Nurriddin was not regarded as handicapped within the meaning of the Rehabilitation Act.

Plaintiff alleges in the second amended complaint that he was "perceived [by NASA management] to have a disability."  Second amended complaint, ¶ 163.  NASA managers never acknowledged that Plaintiff was disabled under the Rehabilitation Act and there is no evidence to suggest that NASA managers mistakenly believed that Mr. Nurriddin suffered from an impairment that substantially limits a major life activity.  Letter from Paulette C. Quinn to Dr. Echeverry, November 12, 1998.  *See Haynes v. Willams*, 392 F.3d 478 (D.C. Cir. 2004).

**c. Mr. Nurriddin is not otherwise qualified for the position that he held because he was not capable of maintaining attendance which is one of the essential functions of his job.**

In order to show that he was an "otherwise qualified" individual under the Rehabilitation Act, Plaintiff must show that he can perform all of the essential functions of the job.  Mr. Nurriddin demonstrated that he was incapable of regular attendance at his job and he was eventually terminated from his position because of his absence.  Second amended complaint.

> One of the most fundamental requirements of any position is reporting for work." *Rosell v. Kelliher*, 2006 WL 1102833, *4 (D.D.C.).  *See Car v. Reno*, 23 F. 3d 525, 530 (D.C. Cir. 1994)("We agree with the proposition that an essential function of any government job is an ability to appear for work...and to complete assigned tasks within a reasonable period of time."); *see also id.* at 530-31 (finding that plaintiff's 'prolonged, frequent and unpredictable absences render her unqualified for any government job'); *Sampson v. Citibank*, 53 F. Supp. 2d 13, 18 (D.D.C. 1999)(holding that an employee who cannot meet the attendance requirements of the job is not a "qualified individual" under the American with Disabilities Act [footnote omitted]; *Walders v. Garrett*, 765 F. Supp. 303, 309-10 (E.D. Va. 1991), *aff'd*, 956 F.3d 1163 (4th Cir. 1992)("Few would dispute that, in general, employees cannot perform their jobs successfully without meeting some threshold of both attendance and regularity.  The weight of authority supports this commonsense conclusion.")

*Rosell v. Kelliher*, 2006 WL 1102833, *4 (D.D.C.)


## G.  PLAINTIFF CANNOT MAKE OUT A CLAIM FOR RETALIATION

The anti-retaliation provision of Title VII prohibits an employer from discouraging its employees from taking advantage of the protections afforded by that statute.  Until the Supreme Court decided *Burlington Northern and Santa Fe Railroad Company v. White*, 126 S.Ct. 2405 (2006.), in order to make out a claim for retaliation under Title VII, a litigant had to prove that he had been made victim to "'a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing significant change in benefits'.  *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir.

2003)(*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)."  *Broderick v.*

*Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).  However, in *Burlington Northern*, the

Supreme Court applied a "reasonable employee" standard holding that the employer's actions, to

constitute retaliation under Title VII, must be harmful to the point that they could well dissuade a

reasonable worker from making or supporting a charge of discrimination.  *Id.*  In so holding, the

Supreme Court adopted the views of the Seventh and the District of Columbia Circuits as

illustrated in *Rochon v. Gonzales*, 438 F.3d 1211 (D.C. Cir. 2006).  *Id.*

In the instant case, under the reasonable person standard set forth in *Burlington Northern*,

Mr. Nurriddin has not made out a prima facie case of retaliation.  None of the allegedly adverse

employment actions that Plaintiff describes in the 2nd amended complaint would have dissuaded a

reasonable person from asserting his rights under Title VII because they constitute "[m]inor and

even trivial employment actions that an irritable, chip-on-the shoulder employee did not like..."

and do not "form the basis of a discrimination suit."  *Russell v. Principi*, 257 F.3d 815, 818 (D.C.

Cir. 2001).

**H.      NASA SEPARATED PLAINTIFF FROM HIS JOB BECAUSE HE HAD
         NOT REPORTED TO WORK FOR FOUR YEARS DUE TO MEDICAL
         INABILITY TO PERFORM THE DUTIES OF HIS POSITION.
         ACCORDINGLY PLAINTIFF WAS NOT A QUALIFIED INDIVIDUAL
         UNDER THE REHABILITATION ACT.**

In order to recover under the Rehabilitation Act for the termination of his employment,

plaintiff has to show that he was "otherwise qualified" for his job and that he was terminated

because of his disability.  29 U.S.C.A. § 794.  *See Kinsella v. Rumsfeld*, 320 F.3d 309 (2nd Cir.

2003).[2]  Courts employ a two-part test to determine if an employee is a qualified individual under the Act.  The test is: 1) whether an employee can perform the essential functions of the job, and 2) whether a reasonable accommodation would allow the employee to perform the essential functions of the job.  *Brockman v. Wyoming Dept. of Family Services*, 342 F.3d 1159 (10th Cir. 2003).  If there is no possible accommodation available that would enable the disabled employee to continue working or return to work, then the employee is not a qualified individual under the Act.  *Brockman v. Wyoming Dept. of Family Services*, 342 F. 3d 1159 (10th Cir. 2003).

Attendance is an essential function of any job.  *Cisneros v. Wilson*, 226 F. 3d 1113 (10th Cir. 2000), overruled on other grounds, *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001).  An employer's reasonable belief that an employee will not ever be able to return to work renders such employee as not a qualified individual under the Rehabilitation Act or the ADA and therefore beyond their protection.  *Smith v. Blue Cross Blue Shield of Kansas, Inc.*, (10th Cir. 1996).  An employer has no duty under the Rehabilitation Act to provide an employee with a stress-free environment.  *See Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 141 n.6 (D.D.C. 2004), citing *Pesterfield v. Tennessee Valley Auth.*, 941 F. 2d 437, 442 (6th Cir. 1991); *Vandeveer v. Fort James Corp.*, 192 F. Supp. 2d 918 (E.D. Wis. 2002); *Gonzagowski v. Widnall*, 115 F.3d 744, 746-47 (10th Cir. 1997).  Furthermore, the inability to work with particular co-workers or supervisors does not create a substantial limitation on major life activity of working.  29 C.F.R. § 1630.2(j)(3)(i).  *Newby v. Whitman*, 340 F. Supp. 2d 637, 658 (M.D.N.C. 2004)(Federal agency did not fail to provide reasonable accommodation when it did

---

[2]As set forth above, defendant does not concede that plaintiff has a disability that substantially limits one or more of his major life activities.

not reassign employee to a position in a different group or department in order to alleviate his

work-related stress and anxiety caused by his current supervisors.)

Plaintiff had not reported for duty at NASA since July 15, 2000. Affidavit of Sharmila de

Mello-Zieschang ¶ 2. He was receiving workers' compensation for an occupational disease.

Affidavit of Sharmila de Mello-Zieschang; Notice of Acceptance of Occupational Disease Claim.

He had been receiving workers' compensation through the Department of Labor since March

2001. Egbert Affidavit ¶ 2. He had not been paid by NASA during this time. *Id*; Notice of

Proposal of Removal. However, plaintiff was encumbering a full-time permanent slot which was

sorely needed by NASA's Education Department due to a shortage of manpower. Diaz

Affidavit. Houston Affidavit. Egbert Affidavit.

Plaintiff documented his inability to work. Egbert Affidavit; Notice of Proposal of

Removal. Mr. Nurriddin received full compensation from the Office of Worker's Compensation

Program. Prior to removing the plaintiff from his position–although not obligated to do

so–NASA conducted a job search to identify any positions available that Mr. Nurriddin could

perform given his mental infirmity. There were no positions for which Mr. Nurriddin qualified.

Egbert Affidavit ¶ 6. The termination action was proposed by Dr. Houston and was taken by

Diaz. Diaz affidavit; Houston affidavit.

OPM regulations provide that if an employee is fully recovered within a year he or she

can be reinstated in his or her previous position. 5 C.F.R. 353, 752, 353, 330  After one year, an

agency is no longer required to reinstate the employee to his or her former position. Affidavit of

Sharmila de Mello-Zieschang ¶ 5. Mr. Nurriddin was not singled out. NASA Headquarters has

removed every employee who has been on worker's compensation for more than one year and

who has been unable to report back to work.  Affidavit of Sharmila de Mello-Zieschang ¶ 7.  "In

each instance within the past twelve years, where the employee was unable to come to work

while on long term workers comp and they did not resign or retire, Headquarters removed the

employees from their position."  Affidavit of Sharmila de Mello-Zieschang ¶ 7.

Since 1968, there have been twelve instances of workers at NASA Headquarters who had

received worker's compensation for more than one year and been unable to return to work.

Affidavit of Sharmila de Mello-Zieschang, ¶ 7.  Ms. de Mello-Zieschang explains, "Of these, six

retired, one resigned, one was terminated because of the expiration of her temporary

appointment, one is unaccounted for in 1973, and three were removed to free up their FTE

position."

Here, plaintiff was unable to report to work and he was receiving worker's compensation

payments due to his occupational disease.  His inability to work is well-documented.  Mr.

Nurriddin did not respond to the notice of proposal to remove and had given the Agency no

reason to expect that Mr. Nurriddin would ever return to work.  Under these circumstances it was

reasonable for the Agency to infer that plaintiff was unable to return to work.  And the Agency

acted pursuant to legal authority when it acted to separate the plaintiff so that the Agency could

mitigate its manpower shortage by filling the position.  Accordingly, the agency has provided a

legitimate non-discriminatory, non-retaliatory basis for plaintiff's termination.  Plaintiff has

failed to allege facts in the second amended complaint that show that he was the victim of

intentional discrimination or that raise an inference of discrimination on the basis of race, gender,

and religion.  Thus, if the standard enunciated in *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957)("[if] it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claims which would entitle him to relief"), is applied to this case, then these claims should be dismissed because even if the facts in the second amended complaint are true, they do not provide a basis for relief under Title VII. Moreover, if the Court accepts the Agency's reasons for the termination as set forth in the Agency affidavits, then the defendants are entitled to summary judgment.  Although the Agency affiants admit that they were aware of plaintiff's EEO activity, they all swear that this had no bearing on the decision to separate the plaintiff due to the necessity of freeing up a permanent full-time position.  Plaintiff cannot establish that the agency's legitimate non-discriminatory, non-retaliatory reasons for his termination are a pretext for discrimination.

## Conclusion

Therefore, based on the foregoing, this case should be dismissed in its entirety.  In the alternative, summary judgment should be granted on behalf of defendants.

Respectfully submitted,


___/s/_____
JEFFERY A. TAYLOR
D.C. Bar No. 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS
D.C. Bar No. 434122
Assistant United States Attorney


____/s/_____
CHARLOTTE A. ABEL
D.C. Bar No. 388582
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 307-2332


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing motion was mailed, postage prepaid, on this 13th day

of December, 2006, to:

Ahmad Nurriddin
740 Sixth St., S.W.
Washington, D.C. 20024


__/s/_____
Charlotte A. Abel